**Jenny Lynn TURNER, Individually and as Representative of the Estate of Jordyn Cathryn Turner, Deceased, and Ronald Jeffrey Turner, Individually and as Representative of the Estate of Jordyn Cathryn Turner, Deceased, Appellants**

v.

**Thomas M. ZELLERS, M.D., Appellee.**

No. 05–06–00093–CV.

Court of Appeals of Texas, Dallas.

Sept. 4, 2007.

Thomas M. Michel, Griffith, Jay, Michel & Moore, L.L.P., Fort Worth, for Appellant.

Linda Stimmel, Stewart & Stimmel, L.L.P., Dallas, for Appellee.

Before Justices MOSELEY, O'NEILL, and FITZGERALD.

## OPINION

Opinion by Justice MOSELEY.

Jenny Lynn Turner and Ronald Jeffrey Turner, individually and as representatives of the estate of Jordyn Cathryn Turner, deceased, filed a suit alleging health care liability claims against Thomas M. Zellers, M.D. arising from the death of their two-year-old daughter, Jordyn. Dr. Zellers moved to dismiss the lawsuit under section 101.106(f) of the civil practice and remedies code, which mandates the dismissal of certain suits brought against employees of a governmental unit if the suit "could have been brought" against the governmental unit under the tort claims act. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.106(f) (Vernon 2005). The trial court granted the motion and dismissed the suit.

Utilizing a de novo standard of review, we conclude the trial court erred in dismissing the lawsuit because Dr. Zellers did not show that Jordyn's death was caused by the condition or use of tangible personal or real property, and thus did not show that the Turners' claims against him could have been brought against UT Southwestern under the tort claims act. Thus, without reaching the remainder of the Turners' arguments, we reverse the trial court's judgment and remand the case for further proceedings.[1]

We take the background facts from the allegations in the Turners' petition. Jor-

1. The Turners also contend that Dr. Zellers's affidavit was untimely and insufficient to show he was an employee of a governmental entity acting within the scope of his employment. Because our disposition of the first issue disposes of this appeal, we do not address these issues.

dyn was born in 2002. She had a soft cry at birth and the Turners were told she swallowed amniotic fluid during the birthing process. In 2003, Jordyn was evaluated for a heart murmur and surgery was recommended. The Turners' obtained a second opinion from a surgeon, who recommended a sedated echocardiogram. After that procedure was performed (in March 2003), the echocardiogram was interpreted by Dr. Zellers, a cardiologist, who confirmed an earlier diagnosis of patent ductus arteriosus (PDA) and coarctation. Jordyn underwent cardiac surgery to repair the PDA and coarctation, and was discharged on March 30, 2003.

Dr. Zellers saw Jordyn several weeks later for a follow-up and noted excellent results from the surgery. Dr. Zellers performed a cardiac catheterization at this visit, which revealed pulmonary arterial hypertension. Dr. Zellers saw Jordyn again about a month later; he again noted excellent results from the surgery and recommended another visit in six months. He did not follow-up on the pulmonary hypertension and his notes did not mention any diagnosis of pulmonary hypertension. At the next visit, Dr. Zellers noted Jordyn was doing remarkably well, but did not follow-up on the pulmonary hypertension and did not mention a diagnosis of pulmonary hypertension in his office notes.

In February 2004, Jordyn was taken to the emergency room because of a possible seizure. She was diagnosed with breath-holding and referred to a neurologist. Electroencephalograms performed in February and April were normal.

Dr. Zellers saw Jordyn again in June 2004. An echocardiogram interpreted by Dr. Zellers indicated some right ventricular enlargement. Dr. Zellers recommended a sedated echocardiogram and referred her to another neurologist. Jordyn saw the neurologist on July 28, 2004 and was diagnosed with cyanotic breath-holding. Later that day, she had another seizure and was treated at Cook Emergency Department.

On August 9, 2004, Dr. Zellers performed a cardiac catheterization on Jordyn at Children's Medical Center, which revealed severe pulmonary arterial hypertension. Dr. Zellers recommended a pulmonary hypertension work-up and, on August 11, identified Jordyn's need for long-term therapy. On September 8, 2004, Jordyn was admitted to Children's for surgery and suffered a cardiopulmonary arrest in the emergency department. She was pronounced dead on September 10, 2004.

The Turners filed suit against Dr. Zellers, alleging he:

(1) failed to timely, properly, safely, or adequately diagnose or assess or recognize Jordyn's illness;

(2) failed to timely, properly, safely, or adequately monitor or report Jordyn's illness;

(3) failed to provide other timely, proper, and adequate medical care and treatment for Jordyn's illness; and

(4) failed to provide timely, proper, and adequate follow-up medical care and treatment for Jordyn's illness.

Dr. Zellers filed an answer and a motion to dismiss seeking relief under section 101.106(f) of the civil practice and remedies code. That section provides:

If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it *could have been brought under this chapter against the governmental unit*, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed

unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

Tex. Civ. Prac. & Rem.Code Ann. § 101.106(f) (emphasis added). The "chapter" referred to is Chapter 101 of the civil practices and remedies code, also known as the Texas Tort Claims Act. *Id.* § 101.002.

After a hearing on the motion, Dr. Zellers filed an affidavit stating that the University of Texas Southwestern Medical Center at Dallas (UT Southwestern) is a state agency, and that at the time he treated Jordyn, he was a full-time faculty member at UT Southwestern and was acting in the course and scope of that employment. The trial court granted the motion to dismiss and later denied the Turners' motion for reconsideration. The Turners timely perfected this appeal.

### "Could Have Been Brought ..."

As the moving party, Dr. Zellers was required to show he was entitled to the relief he sought. *See Phillips v. Dafonte,* 187 S.W.3d 669, 677 (Tex.App.-Houston [14th Dist.] 2006, no pet.). Thus, to obtain relief under section 101.106(f), Dr. Zellers was required to show three things: (1) that he was an employee of UT Southwestern; (2) that the Turners' suit against him was based on conduct within the general scope of his employment with UT Southwestern; and (3) that the Turners' suit could have been brought against UT

Southwestern under the tort claims act. *See* Tex. Civ. Prac. & Rem.Code Ann. § 101.106(f). In their first issue, the Turners focus on the third requirement, arguing the trial court erred in granting Dr. Zellers's motion because he did not show their claims "could have been brought" against UT Southwestern under the tort claims act.

The tort claims act is a limited waiver of the State's sovereign immunity in three general areas: (1) injury caused by an employee's use of a motor-driven vehicle; (2) injury caused by a condition or use of tangible personal or real property; and (3) injury caused by a premises defect. Tex. Civ. Prac. & Rem.Code Ann. §§ 101.021–.022(a); *County of Cameron v. Brown,* 80 S.W.3d 549, 554 (Tex.2002); *Phillips,* 187 S.W.3d at 676. The parties agree the Turners' first issue hinges on whether Dr. Zellers showed that the Turners' claims allege personal injury or death "caused by a condition or use of tangible personal ... property." Tex. Civ. Prac. & Rem.Code Ann. § 101.021(2).

■ The Turners argue we should apply a de novo standard of review to this issue.[2] Dr. Zellers disagrees. Although he states the de novo standard would apply *if* he had filed a plea to the jurisdiction, Dr. Zellers argues an abuse of discretion standard applies because he did not file a plea to the jurisdiction and because his motion did not raise "a jurisdictional issue to be reviewed

---

2. Their brief states:

Because this case involves the issue of whether the injury was caused by a condition or use of tangible personal or real property, the Turners contend that the standard of review should be de novo which is the standard of review for a plea to the jurisdiction based on governmental immunity. *See Tex. Department of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 225–226

(Tex.2004). Whether the pleader has alleged facts that affirmatively demonstrate subject matter jurisdiction is a legal question that the courts review de novo. *Id.* However, the Turners do argue, in the alternative, that a ruling on a motion to dismiss on a health care liability claim is reviewed for clear abuse of discretion, citing *Bowie Memorial Hospital v. Wright,* 79 S.W.3d 48 (Tex. 2002).

by this Court." [3]

We agree Dr. Zellers did not file a plea to the jurisdiction and that his motion to dismiss under section 101.106 does not raise a jurisdictional issue. However, we disagree with Dr. Zellers as to the standard of review applicable to the Turners' first issue. That issue focuses on whether the claims alleged by the Turners could have been brought against UT Southwestern under the tort claims act. The answer to this question involves no trial court determination of facts (at least in this case), and the trial court is in no better position than the appellate court to determine the application of the law to the Turners' pleadings. *See In re R.J.H.*, 79 S.W.3d 1, 7 (Tex.2002). Just as we examine pleadings de novo to determine whether they state a cognizable cause of action, *Higbie Roth Constr. Co. v. Houston Shell & Concrete*, 1 S.W.3d 808, 811 (Tex.App.-Houston [1st Dist.] 1999, pet. denied) (citing *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex.1994)), we review de novo whether the Turners' claims allege personal injury or death "caused by a condition or use of tangible personal ... property" and thus could have been brought against UT Southwestern under the tort claims act.

■ The Turners alleged that Jordyn's injury and death was caused by Dr. Zellers's failure to timely diagnose and treat the pulmonary hypertension shown by the diagnostic tests performed on Jordyn—they do not contend those tests were negligently performed. They did not allege her death was caused by the condition or use of any tangible personal property. Their claims are, "quite simply, [claims] of medical negligence ... not encompassed by the Texas Tort Claim Act's limited waiver of sovereign immunity." *Williams v. Nealon*, 199 S.W.3d 462, 465 (Tex.App.-Houston [1st Dist.] 2006, pet. filed).

On appeal, Dr. Zellers argues the Turners' claims could have been brought against UT Southwestern because the heart catheterization procedure involved the use of tangible personal property. His brief describes cardiac catheterization as an invasive, diagnostic procedure performed to determine the cardiovascular status of the patient. The brief explains how a catheterization is performed, noting that it is accomplished "by the 'use of tangible personal property' including but not limited to a scalpel, guidewire, needle, and catheter." Thus, Dr. Zellers contends, because he used tangible personal property in connection with Jordyn's diagnosis or treatment, a health care liability claim arising from that diagnosis or treatment was caused by a use or misuse of tangible personal property within the parameter of the tort claims act's waiver of sovereign immunity.

Even if Dr. Zellers had presented evidence to the trial court with respect to these matters (which he did not), we conclude his contention would fail. The Turners did not allege that Jordyn was injured or killed as a result of Dr. Zellers's negligent use of scalpels, guidewires, needles, or catheters. There is no allegation,

---

**3.** In support of his argument, Dr. Zellers cites *Bowers v. Matula*, 943 S.W.2d 536 (Tex.App.-Houston [1st Dist.] 1997, no writ), and *Bowie Memorial Hospital v. Wright*, 79 S.W.3d 48 (Tex.2002), both of which state that a motion to dismiss is reviewed under an abuse of discretion standard. Neither of these cases pertain to the issue before us. *Bowie* was an appeal of an order dismissing a health care liability claim on the ground that the plaintiff failed to comply with the expert report requirements of the Health Care Liability Act. *Bowie*, 79 S.W.3d at 52. *Bowers* involved an appeal of an order dismissing, on standing grounds, a suit filed by grandparents seeking reasonable access to their grandchild. *Bowers*, 943 S.W.2d at 538.

for example, that Dr. Zellers used these (or any other) items of tangible personal property to puncture or otherwise injure Jordan's cardiovascular system. Instead, the Turners' allegations relate only to Dr. Zellers's diagnosis and treatment of her pulmonary hypertension.

The tort claims act does not waive immunity just because property was used in a way that furnished the condition that made the injury possible. *See Tex. Dep't of Criminal Justice v. Miller,* 51 S.W.3d 583, 588 (Tex.2001). As the supreme court stated:

> "Use" means "to put or bring into action or service; to employ for or apply to a given purpose." [The governmental unit] did "bring into ... service" and "employ" various drugs and medical equipment while treating [the patient], but that some property is merely involved is not enough. Using that property must have actually caused the injury.

*Id.* (citations omitted). Thus the mere use of tangible personal property by Dr. Zellers in connection with his diagnosis and treatment of Jordyn does not mean the State has waived sovereign immunity for any health care liability claim arising from that diagnosis and treatment. To hold otherwise would render a governmental unit subject to suit any time a physician employed by it picked up a tongue depressor and examined a patient.

We conclude Dr. Zellers did not establish that the Turners' claim could have been brought under the tort claims act against the governmental unit. Accordingly, the trial court erred in granting the motion to dismiss. We sustain the Turners' first issue. We need not address the remaining issues. *See* TEX.R.APP. P. 47.1.

We reverse the trial court's judgment and remand the case for further proceedings.