

In The
Court of Appeals
Seventh District of Texas at Amarillo

_____

No. 07-16-00214-CV
_____


KYLE ANDERSON, M.D., APPELLANT

V.

SUZANNE STINIKER, AS ADMINISTRATOR OF THE ESTATE OF MIKEL STONE
AND AS GUARDIAN OF THE PERSON AND ESTATE OF
WHITLEY TAYLOR STONE, AND EREK MIKEL STONE, APPELLEES

On Appeal from the 72nd District Court
Lubbock County, Texas
Trial Court No. 2015-517,304; Honorable Ruben G. Reyes, Presiding

July 26, 2017

OPINION

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.[1]

By this permissive appeal,[2] we are asked to determine, as a case of first impression, whether a licensed physician who provides emergency or postemergency

---

[1] Justice Mackey K. Hancock, retired, not participating.

[2] Tex. R. App. P. 28.3.

services in a hospital owned or operated by a local government unit, but who is not employed by that hospital, is a "public servant" whose personal liability under certain circumstances is capped at $100,000 pursuant to section 108.003 of the Texas Civil Practice and Remedies Code.[3]  Following the filing of a wrongful death and health care liability suit by Appellees, Suzanne Stiniker, as Administrator of the Estate of Mikel Stone and as Guardian of the Person and Estate of Whitley Taylor Stone and Erek Mikel Stone (collectively Stiniker), Appellant, Kyle Anderson, M.D., moved for partial summary judgment on the ground that he is a "public servant" covered under section 108.002(a) of the Texas Civil Practice and Remedies Code which limited his personal liability.  Stiniker responded that Dr. Anderson's liability is not capped because he is an independent contractor and an employee of a privately-owned professional association and is, therefore, excepted from the definition of a "public servant."  The trial court denied Dr. Anderson's motion and he filed for a permissive appeal which this court granted.  Finding that a physician under those circumstances is a public servant for purposes of that section, we reverse the order of the trial court and remand this cause to the trial court for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

Mikel Stone underwent surgery for rectal bleeding and hemorrhoid disease at University Medical Center (UMC), a local government hospital on February 5, 2015.  According to the surgical physician, Mr. Stone "tolerated the procedure well" and was discharged from UMC and taken home by private vehicle at approximately 2:30 p.m.  While convalescing at home, Mr. Stone began to experience pain and other symptoms

---

[3] TEX. CIV. PRAC. & REM. CODE ANN. § 108.003 (West 2011).  All future references are to the Texas Civil Practice and Remedies Code unless otherwise designated.

and was transported back to UMC by ambulance around 7:41 p.m. At UMC, he was evaluated by a triage nurse and Dr. Anderson, an emergency room physician who did not perform the original surgery. Dr. Anderson ordered a CT scan with IV contrast, and at approximately 10:11 p.m., Dr. Anderson reviewed the results of those tests with the surgeon who performed the original surgery and then diagnosed Mr. Stone with urinary retention followed by abdominal pain, renal impairment, nausea and vomiting, intra-abdominal hemorrhage, and hyponatremia. Mr. Stone was re-admitted and the following morning, while awaiting a nasogastric tube placement, experienced cardio-pulmonary arrest and died. An autopsy revealed a transmural rectum defect, hemoperitoneum, and pulmonary edema.

Stiniker filed a wrongful death and survival health care liability claim against Dr. Anderson and others, seeking compensation for damages arising from Mr. Stone's death. Stiniker sought recovery of compensatory and exemplary damages based on allegations of negligent medical care and treatment rendered to Mr. Stone by Dr. Anderson during his time at the UMC emergency department.

Dr. Anderson subsequently filed his *Motion for Partial Summary Judgment* seeking a legal declaration that his liability, if any, was capped at $100,000 under the provisions of section 108.002. On May 19, 2016, the trial court signed an order denying his motion. Dr. Anderson then sought to invoke the jurisdiction of this court, pursuant to the permissive appeal provisions of section 51.014(d),[4] contending the issue of his status as a "public servant" for purposes of section 108.002 was a controlling question of law as to which there was a substantial ground for a difference of opinion and an

[4] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(d) (West Supp. 2016).

immediate resolution of that issue would materially advance the ultimate resolution of the pending litigation. The trial court signed an order permitting an interlocutory appeal and staying all further proceedings pending a resolution of that issue *via* an interlocutory appeal, if granted. *See* TEX. R. CIV. P. 168. We subsequently granted Dr. Anderson the right to file a permissive appeal of the trial court's interlocutory order of May 19, 2016.

CONTROLLING ISSUE

By a single issue, Dr. Anderson contends the trial court erred by denying his motion for partial summary judgment because his liability, if any, is capped under section 108.002(a) since he is a "public servant" as defined by section 108.001(3). Stiniker contends those liability limitations do not apply because Dr. Anderson is an independent contractor, excepted from the definition of "public servant" by section 108.001(2). Through various shades and phases of that single issue, Dr. Anderson contends the trial court incorrectly resolved the internal definitional conflict, as applied in this case, between the exclusionary provisions of section 108.001(2) and the inclusionary provisions of section 108.001(3).

APPLICABLE LAW

As applicable to the facts of this case, section 108.001 of the Texas Civil Practice and Remedies Code provides the following definitions:

In this chapter:

(1) "Public servant" means a person who is:

(A) a public official elected or appointed to serve a governmental unit and acting in that capacity when the act or omission on which the damages were based occurred; or

(B) covered by Section 104.001 or Section 102.001.

4

(2) "Public servant" does not include an independent contractor, an agent or employee of an independent contractor, or another person who performs a contract for a unit of government.

(3) "Public servant" includes a licensed physician who provides emergency or postemergency stabilization services to patients in a hospital owned or operated by a unit of local government.

Likewise, the limitation of liability provisions of Section 108.002 of the Texas Civil Practice and Remedies Code provide as follows:

(a) Except in an action arising under the constitution or laws of the United States, a public servant is not personally liable for damages in excess of $100,000 arising from personal injury, death, or deprivation of a right, privilege, or immunity if:

(1) the damages are the result of an act or omission by the public servant in the course and scope of the public servant's office, employment, or contractual performance for or service on behalf of a state agency, institution, department, or local government; and

(2) for the amount not in excess of $100,000, the public servant is covered:

(A) by the state's obligation to indemnify under Chapter 104;

(B) by a local government's authorization to indemnify under Chapter 102;

(C) by liability or errors and omissions insurance; or

(D) by liability or errors and omissions coverage under an interlocal agreement.

(b) Except in an action arising under the constitution or laws of the United States, a public servant is not liable for damages in excess of $100,000 for property damage if:

(1) the damages are the result of an act or omission by the public servant in the course and scope of the public servant's office, employment, or contractual performance for or service on behalf of a state agency, institution, department, or local government; and

(2) for the amount not in excess of $100,000, the public servant is covered:

> (A) by the state's obligation to indemnify under Chapter 104;
>
> (B) by a local government's authorization to indemnify under Chapter 102;
>
> (C) by liability or errors and omissions insurance; or
>
> (D) by liability or errors and omissions coverage under an interlocal agreement.

TEX. CIV. PRAC. & REM. CODE ANN. §§ 108.001, 108.002 (West 2011).

STATUTORY CONSTRUCTION

This case implicates a review of the trial court's construction of the above-referenced statutory provisions, which appellate courts review *de novo*. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008). The primary objective in construing a statute is to give effect to the Legislature's intent. TEX. GOV'T CODE ANN. § 311.021 (West 2013); *Am. Home Prods. Corp. v. Clark*, 38 S.W.3d 92, 95 (Tex. 2000). "The plain meaning of the text is the best expression of legislative intent unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results." *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011). When the Legislature's intent is not apparent from the plain meaning of a statute's language, we may resort to other construction aids, including legislative history. TEX. GOV'T CODE ANN. § 311.023(3) (West 2013). In determining legislative intent, courts must consider the statute as a whole, reading all of its provisions in context rather than reading individual provisions in isolation. *Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 501 (Tex. 2015). In doing so, we presume that the Legislature is aware of existing law when it enacts legislation. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877-78 (Tex. 2001). A reviewing court should always seek to enforce the

statute "as written" and "refrain from rewriting text that lawmakers chose." *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 443 (Tex. 2009)

ANALYSIS

Dr. Anderson asserts the trial court erred in interpreting the meaning of "public servant" because the legislative history of section 108.001 demonstrates a clear intent that the inclusionary provisions of section 108.001(3) apply to a licensed physician who acts as an independent contractor; otherwise, paragraph (3) would be rendered meaningless. We agree.

UMC is a public hospital owned and operated by the Lubbock County Hospital District, a hospital district organized under the Texas Constitution and statutory enactments pursuant thereto.[5] As such, it is an institution, the status and authority of which is derived from the Constitution of Texas or from laws passed by the Legislature under the constitution, and it is, therefore, a "governmental unit" as defined by section 101.001(3)(D).[6] *Tex. Tech University v. Ward*, 280 S.W.3d 345, 348 (Tex. App.—Amarillo 2008, pet. denied).

UMC contracts with UMC Physician Network Services ("PNS") to provide physician staffing of the emergency department at UMC. To meet this staffing obligation, PNS contracts directly with individual physicians or their professional associations. At all times relevant to Stiniker's claims, Dr. Anderson provided professional medical services to patients in the emergency department at UMC

---

[5] *See* TEX. CONST. art. IX, § 9; TEX. SPEC. DIST. CODE ANN. §§ 1053.001-1053.303 (West 2016).

[6] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(3)(D) (West Supp. 2016).

7

pursuant to a contract between PNS and Dr. Anderson's employer, C&A Medical, P.A. Therefore, it is undisputed that Dr. Anderson provided "emergency or postemergency stabilization services to patients [including Mr. Stone] in a hospital owned or operated by a unit of local government." As such, Dr. Anderson falls squarely within the definition of a "public servant" provided by section 108.001(3). The question is, how does a court square the inclusive language of section 108.001(3) with the specifically exclusive language of section 108.001(2)?

Stiniker contends the limitation provisions of 108.002 do not apply to independent contractors, like Dr. Anderson, because they were adopted pursuant to a legislative scheme (Chapter 108 of the Texas Civil Practice and Remedies Code) designed to limit the liability of governmental employees acting within the course and scope of their employment with a governmental unit. Stiniker contends the Tort Claims Act was never intended to limit liability of independent contractors, physicians or otherwise, because suits against them do not implicate public resources.

A brief review of the legislative history of Chapter 108 will shed light on our inquiry. What is today Chapter 108 was originally adopted by the Texas Legislature in 1987 as Chapter 107, entitled *Limitation of Liability for Public Servants*. *See* Act of June 3, 1987, 70th Leg., 1st C.S., ch. 2, § 3.12, 1987 Tex. Gen. Laws 37, 50, effective Sept. 2, 1987. Chapter 107 was adopted pursuant to S.B. 5, "relating to revising the Civil Practice and Remedies Code to reform procedures and remedies in civil actions for personal injury, property damage, or death and civil actions based on tortious conduct, including revisions and additions to laws governing the determination of and limitations on liability and damages." *Id.* at 37.

8

Relevant to this dispute, as originally adopted, the definitional provisions of section 107.001 defined a "public servant" as "a person covered by Section 104.001." At that time, section 104.001 defined persons entitled to state indemnity as follows:[7]

> (1) an employee, a member of a governing board, or any other officer of a state agency, institution, or department . . . (3) a physician or *psychiatrist* licensed by this state who was performing services under contract with [four named state entities (not including a "local governmental unit")] . . . .

*See* Act of June 3, 1987, 70th Leg., 1st C.S., ch. 2, § 3.08, 1987 Tex. Gen. Laws 37, 49, effective Sept. 2, 1987. Accordingly, at that time, the Texas Legislature recognized a difference between employees of a state agency and contract medical professionals. Furthermore, the Legislature clearly expressed intent to include contract medical professionals only to the extent that they were performing services for the four specified state entities.

Chapter 107, and its corresponding sections, was renumbered as Chapter 108 pursuant to an act of the 71st Legislature in 1989. *See* Act of Feb. 2, 1989, 71st Leg., R.S., ch. 2, § 16.01(3), 1989 Tex. Gen. Laws 123, 197, effective Aug. 28, 1987. At that time, no substantive changes were made to what was now section 108.001.

In 1995, the Chapter 108 definition of "public servant" was amended by the 74th Legislature to provide as follows:

Section 108.001 DEFINIITONS. In this chapter:

(1) "Public servant" means a person who is:

---

[7] Any italicized words in the cited statutory provisions are as they appear in the Texas General and Special Laws to reflect additions to the statutes.

(A) a public official elected or appointed to serve a governmental unit and acting in that capacity when the act or omission on which the damages were based occurred: or

(B) covered by Section 104.001 or Section 102.001.

(2) "Public servant" does not include an independent contractor, an agent or employee of an independent contractor, or another person who performs a contract for a unit of government.

*See* Act of May 9, 1995, 74th Leg., ch. 139, § 4, 1995 Tex. Gen. Laws 982, 983, effective Sept. 1, 1995. At the time, section 102.001 defined "employee" as including "an officer, *volunteer*, or employee, a former officer, *volunteer*, or employee, and the estate of an officer, *volunteer*, or employee or former officer, *volunteer*, or employee of a local government." Accordingly, section 102.001, expanded the scope of the term "employee" found in section 104.001, while section 108.001(2) clearly restricted the scope by specifically excluding independent contractors, their agents, and employees.

In 2003, the Texas Legislature once again amended the section 108.001 definition of "public servant" by adding paragraph (3), which provided as follows:

(3) "*Public servant*" *includes a licensed physician who provides emergency or postemergency stabilization services to patients at a hospital owned or operated by a unit of local government.*

*See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 11.06, 2003 Tex. Gen. Laws 847, 886, effective Sept. 1, 2003. By adding a provision not theretofore included in the definition of "public servant," the Legislature expressed a clear intent to include licensed physicians who provide emergency or postemergency stabilization services to patients at a hospital owned by a unit of local government in that category of individuals protected by the limitations of liability provisions found in section 108.002.

Although the exclusive language of section 108.001(2) appears to conflict with the inclusive provisions of section 108.001(3), the two sections can be reconciled by simply recognizing that they are not mutually exclusive. In that context, the later enacted, specific provisions of 108.001(3) trump the earlier enacted, general provisions of 108.001(2). Dr. Anderson's issue is sustained.

CONCLUSION

The order of the trial court denying Dr. Anderson's motion for partial summary judgment is reversed. As this was a permissive interlocutory appeal, we remand the cause to the trial court for further proceedings consistent with this opinion.


Patrick A. Pirtle
Justice

11