Ann SALAS, Individually and as Next Friend of Marina A. Tejeda, a Minor, and Marcos G. Salas, Individually, Appellants,

v.

WILSON MEMORIAL HOSPITAL DISTRICT d/b/a Wilson County Memorial Hospital, Appellee.

No. 04–03–00851–CV.

Court of Appeals of Texas, San Antonio.

May 26, 2004.

David E. Dilley, Jr., Dilley Law Firm, San Antonio, for appellants.

Mark A. Keene, Davis & Davis, P.C., Austin, for appellee.

Sitting: ALMA L. LÓPEZ, Chief Justice, CATHERINE STONE, Justice, KAREN ANGELINI, Justice.

## OPINION

Opinion by: CATHERINE STONE, Justice.

This is an appeal from an order granting a plea to the jurisdiction filed by a governmental unit. Appellants, Ann Salas, individually and as next friend of Marina Tejeda, a minor, and Marcos Salas, individually, brought suit against Wilson Memorial Hospital District after the hospital notified Child Protective Services that it believed Marina was being sexually abused by a family member. Wilson Memorial Hospital District filed a plea to the jurisdiction asserting sovereign immunity. The trial court granted the motion and appellants filed this interlocutory appeal. We affirm the trial court's order as to appellants' claims that: (1) Wilson Memorial Hospital improperly interpreted Marina Tejeda's laboratory test; and (2) Wilson Memorial Hospital erroneously ordered Marina Tejeda to undergo testing for sexually transmitted diseases when such testing was not warranted under the circumstances. We reverse the trial court's order as to appellants' claim regarding Wilson Memorial Hospital's misuse of vaginal culture testing equipment upon Marina Tejeda and remand the cause for further proceedings as to that claim.

### BACKGROUND

Marina Tejeda, a three year old girl, was admitted to Wilson Memorial Hospital District ("Wilson Memorial") for a urinary tract infection. Once admitted, medical personnel performed a urethra and vaginal culture probe on Marina. When Wilson Memorial received the results of the urethra and vaginal culture, medical personnel believed the results indicated Marina had chlamydia and gonorrhea. Wilson Memorial personnel immediately contacted Child Protective Services ("CPS") to report that they believed Marina was a victim of sexual abuse. The hospital and CPS advised Marina's mother, Ann Salas, to keep Marina away from Marina's grandfather, Marcos Salas, who they believed may have perpetrated the sexual abuse on Marina.

After learning of Marina's purported abuse, Ann took Marina to the Alamo Child Advocacy Center for additional medical testing. The Center's medical staff examined Marina and determined she showed no signs of sexual abuse. Moreover, a urethra and vaginal culture conducted by the Center revealed Marina did not have any sexually transmitted diseases.

Ann, individually and as next friend of Marina, and Marcos (collectively "the Salases") brought suit against Wilson Memorial after learning of the hospital's mistake regarding Marina's medical exam. The Salases' original petition alleged Wilson Memorial violated the duty of care to them and was negligent by: (1) performing an overly intrusive and improper culture test on Marina; (2) allowing medical staff to put an unconfirmed report of a sexually transmitted disease in Marina's hospital chart; (3) failing to establish a policy against including unconfirmed test results in a patient's hospital charts; (4) failing to establish a proper protocol for cases of alleged sexual abuse; (5) allowing hospital staff to breach confidentiality requirements by disseminating unconfirmed test results to non-treating hospital staff and members of the general public; and (6) failing to establish a confidentiality protocol for information pertaining to patients and their families. The Salases further alleged the hospital committed slander per se and violated Chapter 241 of the Texas Health and Safety Code by its unauthorized communication of Marina's medical exam results to non-treating hospital staff and members of the general public.

Wilson Memorial subsequently filed a plea to the jurisdiction arguing that sovereign immunity barred the Salases' claims. The Salases filed a first amended original petition and a response to the hospital's plea. In their response, the Salases argued that they cured any jurisdictional defect in their original petition by amending their petition to claim that Wilson Memorial: (1) improperly used overly intrusive vaginal culture testing equipment on Marina; (2) improperly utilized a laboratory test for sexually transmitted diseases on Marina when the test was not warranted under the circumstances; and (3) improperly interpreted Marina's laboratory test.[1] The Salases maintained that their amended petition stated a claim for which the Texas Tort Claims Act waives sovereign immunity. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.021 (Vernon 1997). The Salases' response further claimed that the Legislature waived the hospital's immunity in this case by enacting section 241.152 of the Texas Health and Safety Code, which addresses a hospital's authority to disclose its patient's medical information. *See* TEX. HEALTH & SAFETY CODE ANN. § 241.152 (Vernon 2001). Wilson Memorial did not specially except to the language in the Salases' amended petition when it was filed.

At the trial court's hearing on Wilson Memorial's plea, the parties addressed the allegations raised in the Salases' first amended original petition. The trial court subsequently granted the hospital's plea, and the Salases filed this interlocutory appeal. *See* TEX. CIV. PRAC. & REM.CODE ANN § 51.014(a)(8) (Vernon Supp.2004).

## STANDARD OF REVIEW

■ A plea to the jurisdiction is a dilatory plea by which a party challenges a court's authority to determine the subject matter of the action. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). The party suing the governmental entity bears the burden of affirmatively showing that the trial court has jurisdiction to hear the cause. *Tex. Dept. of Criminal Justice v. Miller*, 51 S.W.3d 583, 587 (Tex.2001). Whether a trial court has subject matter jurisdiction is a question of law subject to *de novo* review. *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex.2002); *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex.1998). In reviewing a trial court's ruling on a plea to the jurisdiction, we construe the pleadings in favor of the pleader and look to the pleader's intent. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). We are not required to look solely to the pleadings when deciding a plea to the jurisdiction; we may consider evidence relevant to jurisdiction when it is necessary to resolve the jurisdictional issue raised. *Blue*, 34 S.W.3d at 555.

## TEXAS TORT CLAIMS ACT

Sovereign immunity protects the State from lawsuits for damages. *IT-Davy*, 74 S.W.3d at 853. Sovereign immunity includes two principles: immunity from suit and immunity from liability. *Id.* Immunity from suit bars a suit against the State unless the Legislature expressly gives consent. *Id.* Immunity from liability protects the State from judgments even if the Legislature has expressly given consent to sue. *Id.* A party may establish consent by referencing a legislative statute or a resolution granting express legislative permission. *Tex. Dep't of Transp. v. Jones*, 8

---

**1.** The Salases' amended petition was essentially the same as their original petition in all other respects, except that it also eliminated

its slander per se complaint against the hospital.

S.W.3d 636, 638 (Tex.1999). "Legislative consent to sue the State must be expressed in 'clear and unambiguous language.'" *IT–Davy,* 74 S.W.3d at 854.

■ The Texas Tort Claims Act ("TTCA") provides a limited waiver of sovereign immunity under certain narrowly defined circumstances. *Miller,* 51 S.W.3d at 587. The statute provides a limited waiver of sovereign immunity when personal injury is "caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM.CODE ANN. § 101.021(2). Therefore, to state a claim, the Salases must allege: (1) some use or misuse of tangible personal or real property; and (2) their personal injuries were proximately caused by the use or misuse of such property. *Dallas County Mental Health & Mental Retardation v. Bossley,* 968 S.W.2d 339, 343 (Tex. 1998). "Use" means "to put or bring into action or service; to employ for or apply to a given purpose." *Miller,* 51 S.W.3d at 588. Claims involving the failure to use, or the non-use of property, are not within the waiver of sovereign immunity. *See id.* at 587–88. Further, information does not constitute tangible personal property and the State has not waived governmental immunity for negligence involving the use, misuse, or non-use of information. *Univ. of Tex. Med. Branch v. York,* 871 S.W.2d 175, 179 (Tex.1994). Proximate cause consists of both cause in fact and foreseeability. *Union Pump Co. v, Allbritton,* 898 S.W.2d 773, 775 (Tex.1995).

### Use/Misuse of Medical Equipment

■ The Salases' amended petition alleges that Wilson Memorial improperly used "vaginal culture testing equipment which was overly intrusive upon" Marina, causing Marina physical impairment and

pain and suffering. Such an assertion properly states a claim involving the use or misuse of tangible property. *See Tex. Tech Univ. Health Sciences Ctr. v. Mendoza,* No. 08–01–00061–CV, 2003 WL 1359549, *3 (Tex.App.-El Paso 2003, pet. denied) (mem.op.) (holding plaintiff stated a claim involving the use or misuse of property where she alleged a physician and his hospital staff used or misused walker, fluid machine, and various surgical tools during her treatment). Accordingly, the Salases have met the first requirement under section 101.021 of the TTCA by showing that a use or misuse of property is at issue in this case. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.021(2).

The second condition that must be shown by the Salases to effect a waiver under the TTCA is that the property used by Wilson Memorial proximately caused Marina's injuries. *See id.; Bossley,* 968 S.W.2d at 342. Here, the use or misuse of the vaginal testing equipment was a substantial factor in bringing about Marina's injuries. Marina allegedly suffered physical impairment and endured pain only after Wilson Memorial used the vaginal culture testing equipment upon her. The Salases have therefore met the second requirement under section 101.021 by showing that the use of medical equipment proximately caused Marina's injuries. Accordingly, we hold the Salases' claim survives Wilson Memorial's immunity challenge.

### Use/Misuse of Information

■ The Salases' amended petition also asserts that Wilson Memorial misused tangible personal property by performing a test for sexually transmitted diseases when such a test was not warranted under the circumstances. Wilson Memorial argues the Salases' contention concerns the use or misuse of information, which is not

tangible property. We agree with Wilson Memorial.

In *University of Texas Medical Branch v. York*, the plaintiff asserted that the UTMB's failure to record medical information in his son's medical records and its failure to follow recommendations noted in the records constituted misuses of tangible personal property that waived immunity for the hospital under the TTCA. 871 S.W.2d at 176. The supreme court held that "information, which may or may not be recorded in a patient's medical records, does not constitute tangible personal property" within the meaning of the TTCA and that "the State has not waived governmental immunity for negligence involving the use, misuse, or non-use of information in a patient's medical records." *Id.* at 179. The court reasoned that although "the paper on which doctors and nurses may record information about a patient's condition is tangible in that paper can be seen and touched, information itself is an abstract concept, lacking corporeal, physical, or palpable qualities. Information thus, is intangible; the fact that information is recorded in writing does not render the information tangible property." *Id.* at 178–79.

Here the Salases essentially claim that Wilson Memorial misused information in Marina's medical records to order testing for sexually transmitted diseases when such testing was not warranted. As stated in *York*, "the State has not waived governmental immunity for negligence involving the use, misuse, or nonuse of information in a patient's medical records." *See id.* at 179. Because the Salases' contention concerns the misuse of information in Marina's medical records, immunity is not waived as to this claim.

▪ The Salases' amended petition further asserts that Wilson Memorial misused Marina's laboratory test results by failing to recognize that the results did not indicate Marina had a sexually transmitted disease. Wilson Memorial again argues the Salases' contention is an assertion of use or misuse of information. Once again, we agree with Wilson Memorial.

In *Gainesville Memorial Hospital v. Tomlinson*, the plaintiff's pleadings claimed that Gainsville Memorial Hospital used, misused, or failed to use "laboratory results obtained from blood drawn from Plaintiff by Defendant utilizing medical diagnostic devices so as to know that the Plaintiff's [Hemoglobin and Hematocrit] was falling and it was not appropriate to leave her up and unattended in the condition she was in at that time." 48 S.W.3d 511, 514 (Tex.App.-Fort Worth 2001, pet. denied). The *Tomlinson* court concluded that plaintiff's allegation was actually an allegation of use or misuse of information. *Id.* The court stated, "[l]aboratory results are not tangible property merely because they are recorded on paper which is tangible," *id.* (citing *York*, 871 S.W.2d at 178–79), and concluded the plaintiff's claim did not state a claim for which the TTCA provides a waiver of immunity. *Id.*

Like the plaintiff's claim in *Tomlinson*, the Salases' allegation is that the hospital misused laboratory test results. As recognized in *Tomlinson*, such an assertion constitutes an allegation of use or misuse of information, for which the State has not waived immunity from liability. *See id.* Consequently, this claim cannot survive Wilson Memorial's immunity challenge under section 101.021 of the TTCA.

### OPPORTUNITY TO AMEND PLEADINGS

▪ In their second issue, the Salases assert the trial court erred by dismissing their claims before providing them with an opportunity to amend their petition. *See County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex.2002) ("When a plaintiff fails

to plead facts that establish jurisdiction, but the petition does not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiff should be afforded the opportunity to amend."). The Salases, however, ignore the fact that they filed their first amended petition in response to Wilson Memorial's plea to the jurisdiction. Thus, as a practical matter, the Salases have already had an opportunity to replead to try to cure the defects in their petition. Consequently, we hold the Salases' second contention lacks merit.

## WAVIER BY IMPLICATION

■ The Salases' final contention is that the Legislature intended to waive the State's sovereign immunity by not excluding "governmental units" of the state, *e.g.* hospital districts, from the requirements of section 241.152 of the Texas Health and Safety Code. Section 241.152 requires hospitals not to "disclose health care information about a patient to any person other than the patient or the patient's legally authorized representative without written authorization of the patient...." TEX. HEALTH & SAFETY CODE ANN. § 241.152(a). Section 241.004, however, provides that the requirements of Chapter 241 do not apply to facilities: licensed under Chapter 242 (nursing homes) or 577 (mental health facilities) of the Health and Safety Code; maintained or operated by the federal government or an agency of the federal government; or maintained or operated by this state or an agency of this state. *Id.* at § 241.004 (Vernon 2001). A person harmed by a hospital's unauthorized release of confidential information may sue the hospital for injunctive relief, damages, or both. *Id.* § 241.156(a) (Vernon 2001).

It is well-settled that a statute must contain a clear and unambiguous expression of the Legislature's waiver of immuni-

ty for immunity to be waived. *Wichita Falls State Hosp. v. Taylor,* 106 S.W.3d 692, 696 (Tex.2003). The Legislature ratified this approach in 2001 by adding section 311.034 to the Code Construction Act. *See* TEX. GOV'T CODE ANN. § 311.034 (Vernon Supp.2004); *Wichita Falls State Hosp.,* 106 S.W.3d at 696. This provision provides that "[i]n order to preserve the legislature's interest in managing state fiscal matters through the appropriations process, a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language." TEX. GOV'T CODE ANN. § 311.034.

■ The Salases concede that the provisions within Chapter 241 of the Health and Safety Code do not contain the sort of language that the Legislature generally uses to confirm its intent to waive immunity from suit. *See Wichita Falls State Hosp.,* 106 S.W.3d at 696–97 n. 5, 6. When a statute does not use clear language to confirm its intent, we examine several factors to determine whether the statute may nevertheless waive the State's immunity from suit. *Id.* at 697. First, a statute that waives immunity must do so beyond doubt, even though it does not have to be a model of "perfect clarity." *Id.; see also Kerrville State Hosp. v. Fernandez,* 28 S.W.3d 1, 8 (Tex. 2000) (finding waiver when the provision in question would be meaningless unless immunity was waived). Second, when construing a statute that purportedly waives sovereign immunity, any ambiguity should generally be resolved by retaining immunity. *Wichita Falls State Hosp.,* 106 S.W.3d at 697. Where the text and history of the statute leave room to doubt whether the Legislature intended to waive immunity, we are less likely to find a waiver. *Id.* "Third, if the Legislature requires that the State be joined in a law-

suit for which immunity would otherwise attach, the Legislature has intentionally waived the State's sovereign immunity." *Id.* at 697–98. Lastly, when waiving immunity by explicit language, the Legislature often enacts simultaneous measures to insulate public resources from the reach of judgment creditors. *Id.* at 698.

With the above principles in mind, we will examine the statutory language of Chapter 241 to determine whether, under the facts of this case, the Legislature implicitly waived immunity. First, the statute creates a meaningful cause of action against private hospitals, a claim that remains viable even if suit against the government is barred. *See id.* at 700. The fact that Chapter 241 has meaning and purpose if it is construed against waiver is one indication that the Legislature did not intend to waive immunity by implication. Second, the text and history of the statute leave room to doubt whether the Legislature intended to waive sovereign immunity. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 241.003–.004, 241.021, 241.152–.153, 241.155–.156 (Vernon 2001 & Supp.2004); *see also* SENATE COMM. ON HEALTH & HUMAN SERVS., BILL ANALYSIS, Tex. S.B. 667, 74th Leg., R.S. (1995). As noted above, ambiguities in a statute are resolved in favor of retaining immunity. *See Wichita Falls State Hosp.*, 106 S.W.3d at 697. Third, Chapter 241 does not require that the State be joined in a lawsuit for which immunity would otherwise attach. This is yet another indication that the Legislature did not intend to waive the State's sovereign immunity. Lastly, under the statute, the State is subject to indeterminate damage awards. When a statute fails to provide an objective limitation on the State's potential liability, we infer that the Legislature did not intend to waive immunity. *See id.* at 698. In light of our review of the statute, we conclude that the Legislature did not intend waiver of immunity under Chapter 241. Therefore, the Salases' third issue is overruled.

### CONCLUSION

Based on the foregoing, we affirm the trial court's order as to appellants' claims that: (1) Wilson Memorial improperly interpreted Marina's laboratory test; and (2) Wilson Memorial erroneously ordered Marina to undergo testing for sexually transmitted diseases when such testing was not warranted under the circumstances. We reverse the trial court's order as to appellants' claim regarding the misuse of vaginal culture testing equipment upon Marina and remand the cause for further proceedings as to that claim.