

**NUMBER 13-08-00146-CV**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI - EDINBURG**

---

**RAQUEL SALINAS,**                                                                 **Appellant,**

**v.**

**THE CITY OF BROWNSVILLE,**                                                      **Appellee.**

---

**On appeal from the County Court at Law No. 3
of Cameron County, Texas.**

---

# MEMORANDUM OPINION

**Before Justices Rodriguez, Garza, and Benavides
Memorandum Opinion by Justice Benavides**

Raquel Salinas, appellant, appeals from the trial court's granting of a plea to the jurisdiction in favor of the City of Brownsville (the "City"), appellee. Salinas argues that the City's governmental immunity is waived by the Texas Tort Claims Act ("TTCA") because she properly pleaded facts conveying jurisdiction on the trial court and no emergency exemption applies. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.001-.109 (Vernon 2005

& Supp. 2009).  We affirm.[1]

## I. BACKGROUND

On May 1, 2006, a fire started in Salinas's home.  Salinas, her daughter, and her niece were inside the home.  Salinas and her daughter escaped the fire, but Salinas was not sure whether her niece also made it out of the house.  She went back inside the smoke-filled house but was quickly overcome by the fumes and had to leave.  She sat down on the concrete curb at the street.  Her niece made it safely out of the house through a different door.

The City's fire department arrived and extinguished the fire, and the City's ambulance service arrived after the fire was suppressed.  The emergency medical technicians ("EMTs") from the ambulance service raised Salinas from her seat on the curb and had her sit on a washing machine, which was sitting nearby at the curb.[2]

The EMTs examined Salinas and determined that she was suffering from smoke inhalation, which was exacerbated by Salinas's cigarette smoking habit.  The EMTs left Salinas sitting on top of the washing machine, and while they were away, Salinas fainted, fell off of the washing machine, and injured her back.

On December 13, 2006, Salinas sued the City as well as other defendants not parties to this appeal, alleging that the City's negligence caused her injuries.  The City

---

[1] In its brief to this Court, the City argues that Salinas's appeal should be dismissed for want of prosecution for failure to timely file her brief.  *See* TEX. R. APP. P. 38.8.  On August 14, 2008, we denied the City's motion to dismiss for want of prosecution and granted Salinas's motion for extension of time to file her brief, which the City opposed.  On August 28, 2008, over the City's opposition, we granted Salinas's second motion for extension of time to file her brief.  Salinas reasonably explained her failure to timely file her brief, and the City has not shown significant injury by the late-filed brief.  *See id.* Rule 38.8(1); *Serna v. Webster*, 908 S.W.2d 487, 489 n.2 (Tex. App.–San Antonio 1995, no pet.).  Therefore, we deny the City's motion to dismiss for want of prosecution.

[2] The record does not indicate:  (1) why the washing machine was sitting at the curb; (2) who owns the washing machine; and (3) whether the washing machine was plugged in or turned on when Salinas was placed on it.

2

answered with a general denial, and then, on September 21, 2007, the City filed an amended answer asserting the affirmative defense of sovereign immunity. On January 2, 2008, the City filed its first plea to the jurisdiction contending that Salinas failed to plead jurisdictional facts sufficient to bring her claim under the TTCA. The trial court permitted Salinas to replead, and on February 4, 2008, Salinas filed her "First Amended Original Petition." In that petition, Salinas pleaded additional jurisdictional facts attempting to bring her lawsuit properly under the TTCA.

On February 5, 2008, the City filed its "Plea to the Jurisdiction to Plaintiff's First Amended Petition" and argued that the City's governmental immunity was not waived by the TTCA. *See id.* § 101.021(2) (Vernon 2005). The City argued that Salinas's negligence cause of action against the City did "not fit within" the TTCA's waiver of its immunity; and, therefore, the trial court did not have subject-matter jurisdiction over Salinas's claim. Salinas filed a response, and the trial court granted the City's plea to the jurisdiction. This appeal ensued.

## II. STANDARD OF REVIEW

A plea to the jurisdiction challenges the court's subject-matter jurisdiction and comprises a question of law which we review de novo. *See Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002); *Bland Indep. Sch. Dist. v. Blue*, 54 S.W.3d 547, 554 (Tex. 2000). A court lacks subject-matter jurisdiction over a governmental defendant when that defendant is immune from suit. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993).

To determine subject-matter jurisdiction, we begin with the pleadings. *Tex. Dep't of Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). The plaintiff must plead facts affirmatively demonstrating the court's subject-matter jurisdiction. *Tex. Air Control Bd.*, 852

3

S.W.2d at 446. We are to construe the pleadings liberally, look to the pleader's intent, and accept the pleader's factual assertions as true. *See Miranda*, 133 S.W.3d at 226, 228. When the plea to the jurisdiction challenges the existence of jurisdictional facts, we resolve the jurisdictional facts by considering the evidence presented by the parties. *Bland*, 54 S.W.3d at 555.

When the evidence presented creates a fact issue, the plea to the jurisdiction must be denied and the fact question answered by the fact finder. *Miranda*, 133 S.W.3d at 227-28. "[I]f the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law." *Id.* at 228. This standard is similar to that of a traditional motion for summary judgment. *Id.* "[A]fter the state asserts and supports with evidence that the trial court lacks subject[-]matter jurisdiction, we simply require the plaintiffs, when the facts underlying the merits and subject[-]matter jurisdiction are intertwined, to show that there is a disputed material fact regarding the jurisdictional issue." *Id.* We do not "weigh the claims' merits but must consider only the plaintiffs' pleadings and the evidence pertinent to the jurisdictional inquiry." *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002).

### III. APPLICABLE LAW

Neither party contests that the City is a governmental entity. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(3) (Vernon 2005). As a governmental entity, the City is entitled to governmental immunity[3] and can only be sued to the extent that its immunity has been waived. *See Brown*, 80 S.W.3d at 555. In the tort context, the TTCA "expressly

---

[3] "Sovereign immunity refers to the State's immunity from suit and liability, while governmental immunity protects political subdivisions of the State." *Tex. Tech Univ. Health Scis. Ctr. v. Ward*, 280 S.W.3d 345, 348 (Tex. App.–Amarillo 2008, pet. denied) (citing *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 693 fn.3 (Tex. 2003)).

4

waives . . . immunity in three general areas: 'use of publicly owned automobiles, premises defects, and injuries arising out of conditions or use of property.'" *Id.* (quoting *Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 611 (Tex. 2000) (quoting *Lowe v. Tex. Tech Univ.*, 540 S.W.2d 297, 298 (Tex. 1976))).

Section 101.021 of the TTCA specifically provides that a governmental entity is liable for "personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2). To come within the TTCA's waiver of governmental immunity, "a claimant must allege that (1) the use or misuse of tangible personal property (2) proximately caused the personal injury or death. *Tex. Tech Univ. Health Scis. Ctr. v. Ward*, 280 S.W.3d 345, 348 (Tex. App.–Amarillo 2008, pet. denied) (citing *Dallas County Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 341 (Tex. 1998)).

"Tangible property is understood to be property that is capable of being handled, touched or seen." *Robinson v. City of San Antonio*, 727 S.W.2d 40, 42 (Tex. App.–San Antonio 1987, writ ref'd n.r.e.); *see Univ. of Tex. Med. Branch at Galveston v. York*, 871 S.W.2d 175, 179 (Tex. 1994) (noting that "tangible" connotes something that can be seen and touched and "intangible" means "an abstract concept, lacking corporeal, physical, or palpable qualities"). "'Use' means 'to put or bring into action or service; to employ for or apply to a given purpose.'" *Mullins v. Estelle High Sec. Unit*, 111 S.W.3d 268, 272 (Tex. App.–Texarkana 2003, no pet.) (quoting *Tex. Natural Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 869 (Tex. 2001)). "Property does not cause injury if it does no more than furnish the condition that makes the injury possible." *Bossley*, 968 S.W.2d at 343 (citing *Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 776 (Tex. 1995), *abrogated on other*

5

*grounds by Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 45-46 (Tex. 2007)).

## IV. ANALYSIS

On appeal, Salinas first contends that her pleadings properly conferred jurisdiction on the trial court. She then argues that no emergency exception applies.

## A. Salinas's Pleadings

In her "First Amended Original Petition," Salinas asserted that the City, through the EMTs,

> is liable for failing to properly position Plaintiff in a safe place while she was being examined, moving Plaintiff from a safe position to a dangerous position to examiner [sic] her, failing to monitor Plaintiff to prevent her from falling in the event that she fainted, abandoning her in a dangerous position where she could fall in the event that she fainted.

Salinas alleges that in placing her on the washing machine and leaving her unattended, the EMTs acted with "conscious disregard of their training, first aid methods accepted in the field," and Salinas's welfare. Salinas further argued that the EMTs acted with "willful and wanton negligence."

> Alternatively, Salinas contended that the City is liable for:

> failing to train the EMTs that failing to properly position Plaintiff in a safe place while she was being examined, moving Plaintiff from a safe position to a dangerous position to examiner [sic] her, failing to monitor Plaintiff to prevent her from falling in the event that she fainted, abandoning her in a dangerous position where she could fall in the event that she fainted, would be likely to cause harm to persons in the same or similar circumstances as Plaintiff; or failing to provide the EMTs with basic first aid training, or failing to provide Plaintiff with basic certifications and supervision for care of the type to be expected when responding to a fire.

Additionally, in a section entitled "Use of Tangible Personal Property or Motorized Equipment," Salinas asserted that:

> The EMTs drove to the home of Plaintiff in an ambulance, which is

6

motorized equipment.[4]  The EMTs had and used blood pressure monitors, pulse indicators, and other tangible equipment to assess Plaintiff's condition. The EMTs had available to them in the ambulance oxygen and oxygen masks.  The EMTs had available to them radios, phones and walkie-talkies to communicate with persons who had greater understanding of medicine for assessment of the Plaintiff's condition.  The use of all of these things, tangible personal property and motorized equipment was central to the acts and omissions complained of herein.

Regarding causation, Salinas alleged that:

Such acts and omissions were a proximate cause of the injuries sustained by Plaintiff because it was foreseeable that a person suffering from smoke inhalation, particularly one with a history of tobacco consumption, would faint, it is foreseeable that a person perched atop a washing machine would fall, and it is foreseeable that a person falling off a washing machine would be injured.

## B.    Sufficiency of Pleadings to Confer Jurisdiction

The City contends that Salinas's pleadings are insufficient to overcome governmental immunity and therefore do not bring her claims within the trial court's jurisdiction.  We agree.

For Salinas's lawsuit to properly come within the TTCA's waiver of governmental immunity, two initial requirements must be met:  (1) the property involved must be tangible personal property, and (2) that property must be "used."  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2).  Once the two initial requirements have been met, Salinas must further demonstrate that the use of the tangible personal property proximately caused her injuries. *See Bossley*, 968 S.W.2d at 342-43.  The City does not contest that any of the aforementioned property is tangible personal property.  Therefore, our inquiry begins at the second step, and we must determine whether such property was "used" as required by the TTCA.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2).  Then we must determine

---

[4] Salinas does not claim on appeal that the trial court's ruling regarding the use of a motorized vehicle was error; therefore, we do not address the motorized vehicle subsection of section 101.021.  *See* TEX. R. APP. P. 38.1(i), 47.1; TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(1) (Vernon 2005).

whether the use of each item was the proximate cause of Salinas's injuries. *Bossley*, 968 S.W.2d at 342-43.

1. *"Blood Pressure Monitors, Pulse Indicators, and Other Tangible Equipment"*

Salinas asserted in her petition that the EMTs used "blood pressure monitors, pulse indicators, and other tangible equipment" while evaluating Salinas for smoke inhalation. This equipment was employed for a specific purpose and has therefore been "used" as contemplated by the TTCA. *See Mullins*, 111 S.W.3d at 272. However, Salinas's pleadings fail to demonstrate that the use of this equipment was a proximate cause of her injuries.

"Proximate cause consists of both cause[-]in[-]fact and foreseeability." *Salas v. Wilson Mem'l Hosp. Dist.*, 139 S.W.3d 398, 403 (Tex. App.–San Antonio 2004, no pet.). "Cause[-]in[-]fact means that the defendant's act or omission was a substantial factor in bringing about the injury which would not otherwise have occurred." *Kiesel v. Rentway*, 245 S.W.3d 96, 99 (Tex. App.–Dallas 2008, pet. dism'd). "'Foreseeability' means that the actor, as a person of ordinary intelligence, should have anticipated the dangers that his negligent act created for others." *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex. 1992).

In her petition, Salinas argued only that her injuries were foreseeable. She did not state that the use of "blood pressure monitors, pulse indicators, and other tangible equipment" were the cause-in-fact of her injuries. In fact, she makes no argument that these devices caused her any injury whatsoever. *See Salas*, 139 S.W.3d at 403 (holding that medical equipment was a substantial factor in bringing about the plaintiff's injuries because she suffered physical impairment and endured pain only after the medical

8

equipment was used on her). Here, Salinas does not complain that the monitors, indicators and other equipment were a substantial factor in bringing about her back injury. Because Salinas failed to satisfy her pleading burden, we conclude that the trial court correctly determined that Salinas failed to invoke the TTCA's waiver of immunity regarding the use of the monitors, indicators, and other property. *See Gainesville Mem'l Hosp. v. Tomlinson*, 48 S.W.3d 511, 513-14 (Tex. App.–Fort Worth 2001, pet. denied).

2. *Oxygen, Oxygen Masks, Radios, Phones, and Walkie-Talkies*

Salinas does not assert that the EMTs actually used the oxygen, oxygen masks, radios, phones, or walkie-talkies. She merely argues that this equipment was in the ambulance and available to the EMTs. The non-use of tangible personal property has "expressly been rejected" as a means of waiving immunity under the TTCA. *Id.* at 514 (citing *Kerrville State Hosp. v. Clark*, 923 S.W.2d 582, 584 (Tex. 1996); *Kassen v. Hatley*, 887 S.W.2d 4, 14 (Tex. 1994); *Ager v. Wichita Gen. Hosp.*, 977 S.W.2d 658, 661 (Tex. App.–Fort Worth 1998, no pet.)). We conclude that the trial court correctly found that governmental immunity was not waived regarding the non-use of the oxygen, oxygen masks, radios, phones, and walkie-talkies. Thus, we do not reach the question of whether these items proximately caused her injuries.

3. *Washing Machine*

While Salinas did not list the washing machine as tangible personal property in the use-of-tangible-personal-property section of her petition, she did argue that the EMTs' use of the washing machine caused her injuries. We disagree.

As Salinas stated, the EMTs placed her on the washing machine so that they could evaluate her health status after she inhaled the smoke in her house. This factual situation

9

is similar to what occurred in *Tomlinson*.  *See* 48 S.W.3d at 512-13.  In that case, Tomlinson was a patient at Gainesville Memorial Hospital ("GMH").  *Id.* at 512.  A nurse's aid came to Tomlinson's room to get her out of bed for a shower and sat her on the edge of her bed.  *Id.*  Tomlinson fell off her bed onto the floor and struck her head.  *Id.* Tomlinson sued GMH asserting that the misuse of the bed caused her injury and that GMH's immunity was waived under the TTCA.  *Id.* at 513 (stating that Tomlinson claimed that GMH "used the bed in a wrongful manner by allowing her to sit on the bed without supervision in the condition she was in at the time" she was placed there).  The trial court denied GMH's plea to the jurisdiction, but on appeal, the Fort Worth Court of Appeals reversed, holding that "the evidence does not demonstrate that the *bed* proximately caused Tomlinson's injuries." *Id.* at 514.  (emphasis added).  Therefore, the Fort Worth court held, Tomlinson did not properly demonstrate a waiver of GMH's immunity under the TTCA.  *Id.*

Here, Salinas similarly argued that by placing her on the washing machine and leaving her there, the EMTs used tangible personal property that was the proximate cause of her injuries.  The washing machine was employed for a specific purpose and has therefore been "used" as contemplated by the TTCA.  *See Mullins*, 111 S.W.3d at 272. However, like the bed in *Tomlinson*, the washing machine "did no more than furnish the condition that made the injury possible[,] and it did not proximately cause the injury." *Id.* at 513 (citing Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2); *Bossley*, 968 S.W.2d at 342-43).  We conclude that the trial court correctly found that governmental immunity was not waived regarding the use of the washing machine.

### 4.    *Negligent Training and Supervision*

To the extent that Salinas's pleadings state claims for negligent training and

negligent supervision of the EMTs, we hold that such claims do not bring her lawsuit under the TTCA's waiver of sovereign immunity in the absence of the use of tangible personal property. *See Campos v. Nueces County*, 162 S.W.3d 778, 787-88 (Tex. App.–Corpus Christi 2005, pet. denied); *Hernandez v. City of Lubbock*, 253 S.W.3d 750, 761 (Tex. App.–Amarillo 2007, no pet.) (holding that a claim of negligent supervision and training, which are distinct causes of action, do not bring a claim under the TTCA's waiver when under applicable law, there was no use of tangible personal property); *Univ. of Tex. Health Sci. Ctr v. Schroeder*, 190 S.W.3d 102, 107 (Tex. App.–Houston [1st Dist.] 2005, no pet.) (declaring that "negligent supervision claims do not constitute a premise defect or the condition or use of property claim," therefore the TTCA does not waive immunity for such claims); *Dallas Area Rapid Transit v. Edwards*, 171 S.W.3d 584, 587-88 (Tex. App.–Dallas 2005, pet. denied) ("A claim of negligent supervision or training is not cognizable under the Torts Claim Act.") (citing *Tex. Dep't of Public Safety v. Petta*, 44 S.W.3d 575, 580 (Tex. 2001)).

5.       *Additional Basis for Waiver of Immunity*

Salinas also argues that section 101.0215(a)(1), (18) provides that the City may be held liable when providing emergency services. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.0215(a)(1), (18). "However, this section merely provides a nonexclusive list of governmental functions for which a municipality may be held liable under the Tort Claims Act generally; it does not provide an independent basis for a waiver of governmental immunity." *City of Kemah v. Vela*, 149 S.W.3d 199, 203 n.1 (Tex. App.–Houston [14th Dist.] 2004, pet. denied) (citing *McKinney v. City of Gainesville*, 814 S.W.2d 862, 865 (Tex. App.–Forth Worth 1991, no writ)). We reject Salinas's argument under this section. We

overrule Salinas's first appellate issue.[5]

## V. CONCLUSION

Because Salinas failed to plead facts that would bring her claim under the TTCA, we affirm the trial court's granting of the City's plea to the jurisdiction.

_____
GINA M. BENAVIDES,
Justice

Delivered and filed the
25th day of February, 2010.

---

[5] Because we affirm the trial court's granting of the City's plea to the jurisdiction on grounds relating to Salinas's first argument, we do not reach her second argument regarding the applicability of exemptions to the waiver of immunity. Such exemptions would only apply if we resolved her first issue in her favor. *See* TEX. R. APP. P. 47.1.